OPINION
Scott R. Christensen, plaintiff-appellant, filed an action against Ohio Mulch Supply, Inc. and James Weber, II, defendants-appellees, seeking damages for claims of breach of contract and fraud for the alleged failure of his employer, Ohio Mulch Supply, Inc., to honor its contractual obligations to pay him a promised bonus and to reimburse him for lost salary payments. Defendants answered denying that they had any contractual obligations to plaintiff or that they had committed fraud as well as asserting various affirmative defenses and a counterclaim.
Following discovery, defendants moved for summary judgment on the basis that no contract of employment existed between the parties in regard to the obligation to pay plaintiff a bonus, that the employment was an employment at will, and that defendants had removed plaintiff from his original employment, rendering any obligation on that contract invalid and that there was no fraud. In support of their motion for summary judgment, defendants filed the affidavit of James Weber, II. In opposition to the motion for summary judgment, plaintiff filed a deposition.
The trial court granted the motion for summary judgment and dismissed plaintiff's complaint. Although there was no adjudication of merits of defendants' counterclaim, the entire action was dismissed.
Plaintiff appeals the dismissal of his complaint for the contract claims only, having elected not to appeal the determination concerning fraud. Defendants have not appealed the dismissal of the counterclaim.
Plaintiff asserts the following assignments of error:
 ASSIGNMENT OF ERROR NUMBER 1: THE TRIAL COURT ERRED BY FINDING THAT MR. CHIRSTENSEN WAS NOT ENTITLED TO HIS BONUS PAYMENTS BECAUSE CONTRARY TO THE FINDING BY THE COURT THE PARITES DID HAVE A MEETING OF THE MINDS RELATED TO THE BONUS FORMULA AND THEREFORE AN ENFORCEABLE CONTRACT.
 ASSIGNMENT OF ERROR NUMBER 2: THE TRIAL COURT ERRED WHEN IT HELD THAT MR. CHRISTENSEN WAS PRECLUDED FROM ENFORCING THE CONTRACTUAL AGREEMENTS RELATED TO HIS SALARY SOLELY ON ACCOUNT OF THE FACT THAT HE WAS AN EMPLOYEE AT WILL.
Scott Christensen, who had substantial experience in the production and sales of wood mulch products, learned of an employment opportunity at Ohio Mulch Supply, Inc., and met with James Weber, II, president and sole owner in August 1994. At that time, the parties reached an oral agreement that Christensen would become the Retail Manager at Ohio Mulch. Christensen asked Weber to put his offer in writing and by letter dated August 9, 1994, he did so. That letter reads as follows:
AUGUST 9, 1994
DEAR SCOTT:
 AFTER TALKING TO YOU ABOUT THE POSITION OF DIRECTOR OF RETAIL OPERATIONS, I WOULD LIKE TO TAKE THIS OPPORTUNITY TO GIVE YOU A BRIEF DISCRIPTION OF THE DUTIES AND BENEFITS.
I WOLD LIKE TO OFFER YOU THE FOLLOWING:
1) SALARY OF $52,000.00 PER YEAR.
 2) 3 WEEKS VACATION, 1ST WEEK BETWEEN CHRISTMAS AND NEW YEARS AND OTHER TWO WEEKS TO BE TAKEN BETWEEN JULY AND DECEMBER.
 3) 10% OF RETAIL PROFIT. DETERMINED BY THE FORMULA AGREED UPON BETWEEN THE BOTH OF US.
4) COMPANY CAR.
 THE FOLLOWING IS A BRIEF DISCRIPTION OF THE DUTIES FOR THIS POSITION:
1) OVER SEE THE RETAIL DIVISION AND RETAIL DELIVERY.
 2) RESPONSIBLE FOR MANAGEMENT PERSONNEL OF RETAIL STORIES [sic] AND THEIR STAFF.
 3) MERCHANDISING OF RETAIL STORES AND MAINTAINING PROPER INVENTORY LEVELS.
 4) INTERNAL AUDITS FOR INVENTORY, PERSONNEL, SUPPLIES FOR STORES, DELIVERIES AND TRANSFERS, AND OVER ALL APPEARANCE OF STORES.
5) OVER SEE THE MAINTENANCE OF ALL RETAIL EQUIPMENT.
6) MONTHLY INVENTORY COUNT.
7) ENTERTAINING OUR LARGER RETAIL CUSTOMERS.
 SCOTT, IF YOU ARE INTERESTED IN THIS POSITION, WE CAN GET TOGETHER AND DISCUSS THIS AT FURTHER DEPTH.
 FEEL FREE TO GIVE ME A CALL IF YOU HAVE ANY FURTHER QUESTIONS. LOOKING FORWARD TO HEARING FROM YOU.
SINCERELY
James A. Weber II /s/
JAMES A WEBER II
On August 15, 1994, Christensen responded to defendants' offer as follows:
 August 15, 1994 Ohio Mulch Supply 2140 Advance Avenue Columbus, OH. 43207
Attn: Mr. James A. Weber II, President
Dear Jimmy,
 Again, it was a pleasure to meet with you for lunch last Friday to discuss your offer of employment with Ohio Mulch Supply. I have reviewed your letter of August 9th, verifying your offer of employment and detailing the responsibilities of the position and the compensation package you offered. I accept your offer and look forward to beginning work at Ohio Mulch early next month.
 I will call you to discuss the exact date I can begin work. I want to again thank you for the confidence you have placed in me and look forward to assuming the duties of Retail Operations Manager.
Sincerely,
Scott Christensen /s/
Scott Christensen
In September 1994, Christensen commenced work at Ohio Mulch receiving the $52,000 salary from September 1994 until June 1996. During this time, no bonus was paid to Christensen, although he inquired about the bonus on several occasions.
In September 1996, Weber met with Christensen and several changes were made in regard to Christensen's employment with Ohio Mulch. There is a substantial factual difference as demonstrated by the deposition of Christensen and the affidavit of Weber regarding what happened. Christensen states that Weber told him that Ohio Mulch was having financial difficulties and that the salaries of all the managers would have to be reduced. He said that Christensen would have to agree to a $17,000 salary reduction from $52,000 to $35,000 per year. But according to Christensen, the change in salary was to be temporary only and Weber promised to reinstate his salary and to pay him the lost salary three to five months later when the company could be refinanced pursuant to a bank loan in the fall of 1996. He said that he agreed to the temporary reduction in his salary with the understanding that his salary would be reinstated and he would ultimately be paid the full salary of $52,000 per year.
In September 1996, Christensen agreed to assume the position of sales manager instead of director of retail sales because the company had lost a salesman and needed someone with sales experience. His salary was increased to $40,000 per year where it remained until he resigned in February 1999.
In December 1996, Christensen said he asked Weber to pay him the lost salary which he had promised to re-pay by the end of the year. He said Weber denied that he agreed to pay the money by the end of the year, but said he would re-pay the money by the middle of 1997.
According to Weber, Christensen had initially performed well but was performing poorly and that, in lieu of firing Christensen completely, they had made a replacement agreement to employ him as a salesman or retail sales manager upon completely different terms.
This case was decided on summary judgment. Motion for summary judgment shall be granted by the court if the evidentiary materials in the case show that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Civ.R. 56(C). The moving party bears the initial burden of demonstrating there are no genuine issues of material fact concerning an essential element of the opponent's case. Dresher v. Burt (1996), 75 Ohio St.3d 280, 292. If the moving party meets his initial burden through appropriate Civ.R. 56(C) evidence, such as the affidavit of Weber, that demonstrates the absence of a genuine issue of material fact, the nonmoving party must rebut the motion with evidence, in this instance the deposition of plaintiff, that demonstrates a genuine issue of material fact that must be preserved for trial. The court must construe the evidence against the moving party and grant summary judgment only when it appears that reasonable minds can reach but one conclusion, which is against the nonmoving party. Norris v. Ohio Standard Oil Co. (1982), 70 Ohio St.2d 1, 2.
On appeal, the court treats the action on a de novo basis since there is no live testimony and the trial court is in no better position than the appellate court to make a determination concerning summary judgment. In other words, the court of appeals gives no deference to the trial court's ruling.
We will first consider appellant's second assignment of error which is whether a reasonable fact finder could find that the original agreement of employment between the parties remained in force after the revised arrangements in June and September 1996 were made, construing the evidence most favorably toward the nonmoving party.
According to plaintiff's sworn testimony at deposition, there were oral modifications to the written contract that the parties had entered into in August 1994. The $52,000 a year salary was retained with plaintiff agreeing to take a temporary deferment of his entire salary to be made up at a later time when refinancing was secured. In other words, according to plaintiff's testimony, although his work duties temporarily changed, the salary remained constant and the salary portion of the original agreement still remained in forced. Even prior to this time, there was an agreed modification of the provision concerning the company car with no other change of the other provisions of the written contract. According to plaintiff's testimony, plaintiff was not fired and rehired at a different position, but he temporarily assumed a different position and continued to do so at a temporarily reduced salary which was to be supplanted with the original salary within a relatively short period of time of less than one year.
The trial court based its decision primarily on the fact that plaintiff was an employee at will and, with no definite term of employment, could be terminated at any time. While that is true, the testimony shows, if plaintiff is to be believed, that plaintiff was not terminated and that he continued an employment at the same salary rate of $52,000 a year. There is a genuine issue of fact concerning whether defendants' promise to compensate plaintiff at the rate of $52,000 a year continued during plaintiff's entire term of employment in which there was no actual break, with only an alleged temporary modification of duties to meet a situation at the company and a deferment of salary which continued to be based upon the agreed rate. While defendants' position concerning what occurred is very different than that of plaintiff, the actual agreement based upon the credibility of the parties remains an issue for the trier of fact. The statute of frauds, which was not the basis for granting summary judgment, cannot be used as a basis to support the trial court's decision as the contract could be fully performed within one year since plaintiff was an employee at will. Even after the modification of employment in June and September 1996, plaintiff remained an employee at will.
Furthermore, the fact that one aspect of the agreement, that of the bonus, may not be definite enough to be enforceable, does not allow defendants to claim there was no agreement otherwise as its lack of enforceability would only benefit defendants and had no effect on the other obligations of defendants.
Plaintiff's second assignment of error is sustained.
Plaintiff's first assignment of error is that there is a genuine issue of fact concerning the parties meeting of the minds in regard to the nature of the bonus that was promised in their contract of August 1994.
At the lunch meeting in early August 1994, prior to putting their agreement in writing, the parties discussed a bonus based upon ten percent of the retail profit which, according to plaintiff's deposition, was as follows:
 A. We discussed that the retail profits would be figured on each year's sales, but that sales varied from year to year so we couldn't get an exact figure what amount that would be, compensation would be. [Depo., at 14.]
He further stated that there was no conversation about a formula other than that the ten percent of retail profits would be based upon each year's sales. After the offer of August 9, 1994 and his acceptance of August 15, 1994, plaintiff testified that there was no question about what the formula mentioned in the letter was. He stated as follows:
 A. * * * We defined what that meant. We had a subsequent conversation about what this line meant, and it was reiterated it was 10 percent of retail profits but that the formula would be related to how much we sold each year so that there would not be a definition of what that line was truly worth. [Depo., at 21.]
He stated that he understood that the "formula" meant sales less expenses is profit. He further indicated that the "subsequent discussions about the formula" were as above stated, reiterated in the car the first week that he worked and, when asked if everything was satisfactory, he said fine.
We must first turn to the written contract and the offer of August 9, 1994. Weber stated in regard to the bonus, as follows:
 10% OF RETAIL PROFIT. DETERMINED BY THE FORMULA AGREED UPON BETWEEN THE BOTH OF US.
As part of the offer, Weber stated that they could get together and discuss the offer at further depth if he was interested. It was obvious from plaintiff's testimony that the ten percent of retail profit was not discussed at further depth and that there was only a vague illumination of how the retail profit was to be determined, particularly when the company had both wholesale and retail divisions and probably there was the necessity of allocating expenses that were to be shared between the two divisions.
In a written document, ten percent of retail profit was to be determined by the "formula agreed upon between the both of us." If ten percent is the formula, why would there be the necessity of changes from year-to-year other than in the figures against which the ten percent was to be applied. Even if plaintiff's version of what the ten percent of that were to be used, the trier of fact would still have no guidance on which figures were to be used. There is no testimony in the record that shows that the bookkeeping of the company provided a clear delineation of sales and expenses allocated between the retail and wholesale divisions and obviously each party, according to what best benefited them, would have different ideas of the allocation of expenses.
We agree that there was no "formula" that was ever agreed upon that would be sufficiently clear to be enforceable.
Plaintiff's first assignment of error is overruled.
Plaintiff's first assignment of error is overruled and his second assignment of error is sustained. The case is remanded to the trial court for a trial on the merits concerning the obligation of defendants to compensate plaintiff at the rate of $52,000 per year for the entire time of his employment. All other issues were either not appealed or disposed of in this opinion so that the salary issue remains the sole issue to be adjudicated between the parties.
 ___________________ McCORMAC, J.
PETREE, J., concurs.
KENNEDY, J., concurs in part and dissents in part.
McCORMAC, J., retired, of the Tenth Appellate District, assigned to active duty under the authority of Section 6(C), Article IV, Ohio Constitution.